UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THOMAS CRONK,

                Plaintiff,

    v.

HUDSON VALLEY ROOFING & SHEETMETAL, INC., *et al.*,

                Defendants.

No. 20-CV-7131 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

On September 1, 2020, Plaintiff Thomas Cronk ("Plaintiff") brought this Action against Hudson Valley Roofing & Sheetmetal, Inc. ("HVRS"), Palisades Equipment Co., Inc. ("Palisades"), Hayden Building Maintenance Corporation ("HBMC"), and Gregory P. Hayden ("Hayden"; collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 190 *et seq.* The Parties now seek approval of their Proposed Settlement Agreement. (Letter from Bhavleen Sabharwal, Esq., to Court (Oct. 23, 2020) ("Sabharwal Letter") Ex. A ("Proposed Settlement Agreement," or "PSA") (Dkt. Nos. 6, 6-1).) For the reasons that follow, the Parties' application is denied without prejudice.

I. Background

According to the Complaint, Plaintiff was employed by Defendants from 1985 until January 24, 2020. (Compl. ¶ 25.) At all times relevant to the Complaint, Defendants jointly employed Plaintiff, whose "job duties included repairing a variety of equipment, motor vehicles,

trucks, forklifts, and aerial lifts; performing welding and fabrication of safety railings, ladders, hatches, and decking for job sites; driving and delivering loaded heavy trucks and tankers; maintaining and repairing asphalt storage tanks; and making asphalt deliveries." (*Id.* ¶¶ 22, 26.) Plaintiff contends that during the course of his employment, he regularly worked on average at least 55 hour per week for HVRS, Palisades, and HBMC. (*Id.* ¶ 27.)[1] According to Plaintiff, he worked at least 10 hours each weekday, five hours on Saturday, and an additional five hours on two Sundays each month. (*Id.* ¶ 28.) On average, he performed at least 15 hours of overtime each week. (*Id.* ¶ 29.)

Plaintiff alleges that Defendants failed to maintain records of his work hours; failed to pay him the appropriate overtime rate for any hours worked in excess of 40 hours per week; and failed to provide him with wage statements listing his regular hourly rate, overtime rate, number of regular hours worked, and the number of overtime hours worked. (*Id.* ¶¶ 30–31, 34.) Plaintiff asserts that under the FLSA, he is entitled to recover unpaid overtime, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees. (*Id.* ¶ 1.) He asserts that under the NYLL and supporting regulations, he is entitled to recover unpaid overtime, damages for Defendants' failure to furnish wage statements, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees. (*Id.* ¶ 2.)

Although Plaintiff filed his Complaint asserting these alleged wage violations on September 1, 2020, (*see* Dkt. No. 1), he first raised these claims, along with separate discrimination claims, by letter dated March 13, 2020, (*see* Sabharwal Letter 2). The Parties have entered into a separate, confidential agreement to resolve the alleged discrimination claims,

---

[1] Plaintiff alleges that Defendant Hayden "was, at all relevant times, in active control and management of Defendants" HVRS, Palisades, and HBMC; "regulated the employment of [their employees]"; and "acted directly and indirectly in the interest of" these companies. (Compl. ¶ 15.)

which were still pending before the Equal Employment Opportunity Commission as of October 2020. (*Id.* at 1, 2.) Consistent with the requirement that FLSA settlements be approved by this Court, the Parties submitted their Proposed Settlement Agreement resolving the FLSA wage claims on October 23, 2020. (*See id.* at 1.)

## II.  Discussion

### A.  Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 577 U.S. 1067 (2016).[2] Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, 137 F.Supp.3d 582, 584 (S.D.N.Y. 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a

---

[2] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA." *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same);

4

*Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).[3] To this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (second alteration in original) (quoting *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 176).

B.  Analysis

1.  The Proposed Settlement Agreement

Under the Proposed Settlement Agreement, Defendants agree to pay Plaintiff a total sum of $3,485.66 (the "Settlement Amount"). (Sabharwal Letter 3; PSA ¶ 1.) This amount reflects $1,742.83 in accumulated overtime pay and an equal amount in liquidated damages. (*See* Sabharwal Letter 3.)

To arrive at this final Settlement Amount, the Parties began with what Defendants contend was Plaintiff's annual salary—$85,000 per year—and derived an hourly rate from this

---

[3] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (alteration omitted).

figure. (*See id.*)[4] An annual salary of $85,000 per year is roughly equivalent to an hourly rate of $40.87 and an overtime rate of $61.30. (*Id.*)[5] For purposes of settlement, the Parties stipulated that Plaintiff "may have accumulated 28 hours of unpaid overtime" at this hourly rate of $61.30. (*Id.*) The Parties state that an "accumulated 28 hours of unpaid overtime at an overtime rate of $61.30 . . . equals $1,742.83." (*Id.*) That is wrong. 28 hours multiplied by $61.30 equals $1,716.40—*not* $1,742.83. Evidently unaware of their arithmetic error, the Parties then doubled the $1,742.83 figure "to represent liquidated damages," resulting in a final Settlement Amount of $3,485.66. (*Id.*) In the final analysis, of course, the Parties' error is insignificant: based on the Parties' methodology, the properly calculated total overtime amount ($1,716.40) would produce a final settlement amount of $3,432.80 ($1,716.40 x 2), which is only $52.86 less than the proposed Settlement Amount of $3,485.66. Accordingly, the Court's analysis assumes that Plaintiff will receive the actual amount listed in the Proposed Settlement Agreement: $3,485.66.

### 2. Whether Settlement Amount is Fair and Reasonable

Having reviewed the Complaint, the Proposed Settlement Agreement, and the Sabharwal Letter, the Court concludes it does not have sufficient information to determine whether the Settlement Amount is fair and reasonable. According to Plaintiff's submission, he "is entitled to recover on his FLSA overtime claims an amount to be determined at trial, *estimated to be in the approximate amount of $45,000*[.]" (Compl. ¶ 41 (emphasis added); *see also* Sabharwal Letter 2 ("Plaintiff calculates his unpaid overtime for the three-year FLSA period as approximately

---

[4] Plaintiff maintains that his annual salary was $93,000, not $85,000 as Defendants assert. (Sabharwal Letter 2.)

[5] An annual salary of $85,000, divided by 52 weeks in a year, equals $1,634.62 per week. Dividing this figure by 40 hours/week produces an hourly rate of approximately $40.87. Multiplied by the 1.5x overtime rate, this hourly rate results in an overtime rate of approximately $61.30. (*See* Sabharwal Letter 3.)

$45,000.").) However, Plaintiff does not provide an explanation of the methodology used to calculate this amount, or the underlying data on which the calculation is based. The Parties must submit to the Court a more detailed explanation of Plaintiff's potential recovery at trial before the Court will approve the Settlement Amount. *See Nights of Cabiria*, 96 F. Supp. 3d at 176 ("The parties have not 'provided the [c]ourt with each party's estimate of the number of hours worked or the applicable wage.'" (alteration omitted)); *see also Gaspar*, 2015 WL 7871036, at *2 (noting that although the court was satisfied with the parties' explanation of the methodology used to generate settlement amounts, the parties failed to submit the "underlying data" to which the methodology was applied).

Even without the additional information requested herein, the Court has concerns about the fairness of the proposed Settlement Amount. As the Parties acknowledge, the Settlement Amount of $3,485.66 "represents a small percentage (approximately 7%) of Plaintiff's FLSA claim," (Sabharwal Letter 3), which, as noted, is $45,000, (Compl. ¶ 41; Sabharwal Letter 2). It is true, as "[c]ourts in this district have noted[,] that factual litigation risks may result in a lower reasonable settlement amount," *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *5 (S.D.N.Y. Sept. 17, 2020) (gathering cases), and the Court must "consider[] the settlement amount in light of 'the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement[,]'" *id.* (quoting *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016)). Here, Defendants "strongly dispute liability," contending that (1) Plaintiff was an exempt employee not entitled to overtime; (2) Defendants were not joint employers; and (3) Plaintiff did not work more than 40 hours per week. (Sabharwal Letter 3.) And indeed, one court in the Second Circuit has approved a settlement of only 7% of the plaintiff's best-case scenario, based on a similar combination of factual and legal

risk. *See Aguilar v. N & A Prods. Inc.*, No. 19-CV-1703, 2019 WL 5449061, at *1–2 (S.D.N.Y. Oct. 24, 2019) (approving settlement of $40,000 where the plaintiffs estimated potential recovery was $570,000, based on, *inter alia*, a dispute about the plaintiff's exempt status and number of hours worked); *see also Zorn-Hill*, 2020 WL 5578357, at *4 (approving settlement amount that constituted 12.5% of the plaintiffs' realistic best-case scenario).

Thus, a settlement amount constituting only 7% of Plaintiff's potential recovery would fall on the extremely low end of settlements approved in this Circuit to begin with. But here, the 7% figure actually inflates the percentage Plaintiff would recover from his best-case scenario. Although the Parties correctly note that $3,485.66 is roughly 7% of Plaintiff's $45,000 FLSA claim, (Sabharwal Letter 3), this $45,000 denominator undercounts Plaintiff's alleged damages and best-case return at trial, for two reasons. First, this $45,000 figure does not include liquidated damages. (*See* Compl. ¶ 41 (stating that Plaintiff is entitled to an estimated $45,000 based on his FLSA overtime claims, *plus an additional equal amount as liquidated damages*" (emphasis added)).) Liquidated damages are indeed available "in an additional equal amount" as unpaid overtime compensation under the FLSA. *See* 29 U.S.C. § 216(b). Second, it is not clear from the Complaint that this $45,000 figure includes possible statutory damages of up to $5,000 to which Plaintiff may be entitled under New York law for Defendants' alleged failure to provide wage notices. *See* N.Y. Lab. Law § 198. Thus, Plaintiff's best-case return on his FLSA claim is $95,000.[6] The proposed Settlement Amount ($3,485.66) represents only 3.67% of this best-case potential recovery. The Parties have cited no authority (nor is the Court aware of any) that would sanction such a meager recovery.

---

[6] Total best-case judgment for Plaintiff's FLSA claim is $45,000 (actual damages), plus $45,000 (liquidated damages), plus $5,000 (statutory damages).

8

3. Good Faith

Notwithstanding its reservations about the fairness of the Settlement Amount and the lack of information on which to make such a determination, the Court is satisfied that the Proposed Settlement Agreement was negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion. (*See* Sabharwal Letter 2 (stating that the Proposed Settlement Agreement "was reached after an arm's length negotiation, including extensive settlement discussions with counsel for [Plaintiff] that have been ongoing since mid-April 2020").) The Court is also satisfied, based on the Parties' representations, that the settlement will allow the Parties to avoid the anticipated burdens and risks of litigation.

4. Similarly Situated Plaintiffs

Additionally, the Court is not aware of other employees who are similarly situated to Plaintiff, and Plaintiff will be the only employee affected by the settlement and dismissal of the lawsuit. These facts also weigh in favor of approval. *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement); *Penafiel*, 2015 WL 7736551, at *2 (noting that the fact that "[n]o other employee ha[d] come forward" supported settlement approval); *Santos v. Yellowstone Props., Inc.*, No. 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same).

5. Release Provision

The Court also finds that the proposed release provision is appropriately narrow. "[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically

9

any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

Here, the Proposed Settlement provides that "Plaintiff knowingly and voluntarily releases and forever discharges [Defendants] of and from all claims asserted in this [A]ction, consistent with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as of the date of execution of this Agreement." (PSA ¶ 3.)  This release provision is appropriate under applicable law.  As noted, in general, "any release provision must be limited to the claims at issue in this action." *Lazaro-Garcia*, 2015 WL 9162701, at *2; *see also Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) ("[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to

10

the claims at issue in this action." (quotation marks omitted)).  Thus, courts have held that in a FLSA settlement, the release must generally be limited only to wage and hour claims.  *See Cheeks*, 796 F.3d at 206 (explaining that courts will not approve settlement agreements that waive "claims that have no relationship whatsoever to wage-and-hour issues"); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 23, 2017) (approving release that, "while broad, . . . relates specifically to wage and hour issues without encompassing, for example, prospective discrimination claims").  Accordingly, because the Proposed Settlement Agreement specifies that the release applies only to "all claims asserted in this [A]ction," (PSA ¶ 3), which claims pertain exclusively to wage-and-hour issues, the release provision is appropriately narrow.

As noted, the Parties have also entered into a separate, confidential agreement to resolve Plaintiff's alleged discrimination claims.  (*See* Sabharwal Letter 2.)  Precedent confirms that such an approach is permissible.  *See Ortiz v. Breadroll, LLC*, No. 16-CV-7998, 2017 WL 2079787, at *2 (S.D.N.Y. May 15, 2017) (observing "authority for a bifurcated settlement agreement," in which the parties submit an FLSA agreement for court review and approval, "but enter into a separate . . . settlement agreement with respect to the counterclaims" (collecting cases)); *Yunda v. SAFI-G*, No. 15-CV-8861, 2017 WL 1608898, at *1–2 (S.D.N.Y. Apr. 28, 2017) (approving the submission of two settlement agreements, one resolving the plaintiff's FLSA claims that required approval under *Cheeks*, and the other resolving the plaintiff's NYLL claims that did not require approval under *Cheeks* and that contained a confidentiality clause); *Abrar v. 7-Eleven, Inc.*, No. 14-CV-6315, 2016 WL 1465360, at *1 (E.D.N.Y. Apr. 14, 2016) (noting that the court approved of a bifurcated settlement structure whereby the parties publicly

filed their FLSA settlement agreement and executed a separate, confidential settlement agreement for non-FLSA claims under the NYLL).

### 6. Attorneys' Fees

As Plaintiff's counsel has waived his right to attorneys' fees with respect to the FLSA claim, (Sabharwal Letter 3), the Court need not consider this final factor. *See Davitashvili v. Beacon Van Line & Storage, Inc.*, No. 15-CV-5575, 2016 WL 5390336, at *1 (E.D.N.Y. Sept. 26, 2016) (adopting report and recommendation approving a FLSA settlement agreement in which the plaintiff's counsel "waive[d] any rights to fees").

### III.  Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement Agreement is denied without prejudice. The Parties may reapply for approval of a settlement that complies with the Court's determinations in this Order.

SO ORDERED.

Dated:  January 5, 2021
        White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE