UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS CRONK,

                              Plaintiff,

      v.

HUDSON VALLEY ROOFING & SHEETMETAL,
INC., *et al.*,

                           Defendants.

No. 20-CV-7131 (KMK)

OPINION & ORDER

Appearances:

Stanley J. Silverstone, Esq.
Law Office of Stanley J. Silverstone
New City, NY
*Counsel for Plaintiff*

Bhavleen K. Sabharwal, Esq.
Eustace, Prezioso & Yapchanyk
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

On September 1, 2020, Plaintiff Thomas Cronk ("Plaintiff") brought this Action against

Hudson Valley Roofing & Sheetmetal, Inc. ("HVRS"), Palisades Equipment Co., Inc.

("Palisades"), Hayden Building Maintenance Corporation ("HBMC"), and Gregory P. Hayden

("Hayden"; collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 190 *et seq.*  The

Parties now seek approval of a revised proposed settlement agreement (the "Revised Settlement

Agreement" or "RSA").  (Letter from Bhavleen Sabharwal, Esq., to Court (Feb. 12, 2021) ("Feb.

12 Sabharwal Letter") Ex. A ("RSA") (Dkt. Nos. 13, 13-1).)  For the reasons that follow, the

Parties' Application is granted.

## I.  Background

According to the Complaint, Plaintiff was employed by Defendants from 1985 until

January 24, 2020.  (Compl. ¶ 25 (Dkt. No. 1).)  At all times relevant to the Complaint,

Defendants jointly employed Plaintiff, whose "job duties included repairing a variety of

equipment, motor vehicles, trucks, forklifts, and aerial lifts; performing welding and fabrication

of safety railings, ladders, hatches, and decking for job sites; driving and delivering loaded heavy

trucks and tankers; maintaining and repairing asphalt storage tanks; and making asphalt

deliveries." (*Id.* ¶¶ 22, 26.)  Plaintiff contends that during the course of his employment, he

regularly worked on average at least 55 hour per week for HVRS, Palisades, and HBMC.  (*Id.*

¶ 27.)[1]  According to Plaintiff, he worked at least 10 hours each weekday, five hours on

Saturday, and an additional five hours on two Sundays each month.  (*Id.* ¶ 28.)  On average, he

performed at least 15 hours of overtime each week.  (*Id.* ¶ 29.)

Plaintiff alleges that Defendants failed to maintain records of his work hours; failed to

pay him the appropriate overtime rate for any hours worked in excess of 40 hours per week; and

failed to provide him with wage statements listing his regular hourly rate, overtime rate, number

of regular hours worked, and the number of overtime hours worked.  (*Id.* ¶¶ 30–31, 34.)  Plaintiff

asserts that under the FLSA, he is entitled to recover unpaid overtime, liquidated damages, pre-

judgment and post-judgment interest, and attorneys' fees.  (*Id.* ¶ 1.)  He asserts that under the

---

[1] Plaintiff alleges that Defendant Hayden "was, at all relevant times, in active control and management of Defendants" HVRS, Palisades, and HBMC; "regulated the employment of [their employees]"; and "acted directly and indirectly in the interest of" these companies.  (Compl. ¶ 15.)

NYLL and supporting regulations, he is entitled to recover unpaid overtime, damages for Defendants' failure to furnish wage statements, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees.  (*Id.* ¶ 2.)

Although Plaintiff filed his Complaint asserting these alleged wage violations on September 1, 2020, (*see* Dkt. No. 1), he first raised these claims, along with separate discrimination claims, by letter dated March 13, 2020, (*see* Letter from Bhavleen Sabharwal, Esq., to Court (Oct. 23, 2020) ("Oct. 23 Sabharwal Letter") 2 (Dkt. No. 6)).  The Parties have entered into a separate, confidential agreement to resolve the alleged discrimination claims, which were still pending before the Equal Employment Opportunity Commission as of February 2021.  (Feb. 12 Sabharwal Letter 2.)  Consistent with the requirement that FLSA settlements be approved by this Court, the Parties submitted a proposed settlement agreement (the "PSA") resolving the FLSA wage claims on October 23, 2020.  (Oct. 23 Sabharwal Letter 1; PSA ¶ 3 (Dkt. No. 6-1).)  By Order dated January 5, 2021 (the "Jan. 2021 Order"), the Court denied the proposed settlement agreement without prejudice because the Court did not have enough information to determine whether the settlement amount was fair and reasonable.  (*See* Jan. 2021 Order 6–7 (Dkt. No. 9).)  Specifically, the Court observed that Plaintiff had failed to "provide an explanation of the methodology used to calculate" his estimated potential recovery at trial, "or the underlying data on which the calculation [was] based."  (*Id.* at 7.)[2]

On February 12, 2021, the Parties submitted the Revised Settlement Agreement.  (*See generally* RSA.)  Under this revised agreement, the Parties increased the settlement amount by

---

[2] The Court also observed that, even without the additional information requested, it had concerns regarding the fairness of the initial settlement amount, which appeared to represent only 3.67% of Plaintiff's best-case potential recovery at trial.  (Jan. 2021 Order 8.)

over $16,000.  (Feb. 12 Sabharwal Letter 1.)  The Parties have now renewed their request to have the Court approve the proposed agreement.  (*See id.*)

## II.  Discussion

### A.  Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 577 U.S. 1067 (2016).[3]  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F.Supp.3d 582, 584 (S.D.N.Y. 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v.*

---

[3] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation' and liquidated damages due under the FLSA."  *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

*Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citation and quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (citation and quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted).[4]  To this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 176).

### B.  Analysis

#### 1.  Whether Settlement Amount is Fair and Reasonable

Under the RSA, Defendants agree to pay Plaintiff a total sum of $20,000.00 (the "Settlement Amount").  (Feb. 12 Sabharwal Letter 1; RSA ¶ 1.)  This amount reflects $10,000 in wages and $10,000 in liquidated damages.  (RSA ¶ 1.)  Plaintiff's counsel has agreed to waive his fees to facilitate approval of the RSA.  (Feb. 12 Sabharwal Letter 7.)

##### a.  Fluctuating Workweek Method

The Parties maintain that Plaintiff's overtime rate should be calculated using the Department of Labor's ("DOL") fluctuating workweek ("FWW") method, codified at 29 C.F.R. § 778.114.  (*Id.* at 3.)  "Under the [FLSA], an employee can only work a maximum of 40 hours

---

[4] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair."  *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (citation and alteration omitted).

in a given week, and if a worker's hours surpass that ceiling, the employer must pay for the additional hours at 'a rate not less than one and one-half times the regular rate at which he is employed.'" *Stein v. Guardsmark, LLC*, No. 12-CV-4739, 2013 WL 3809463, at *1 (S.D.N.Y. July 23, 2013) (citation omitted).  In *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942), however, the Supreme Court held that "an employer and employee could legally agree, in certain circumstances, to a compensation arrangement where the employee would be paid a flat weekly rate for fluctuating hours."  *Stein*, 2013 WL 3809463, at *2 (quoting *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1011 (N.D. Cal. 2009) (summarizing *Missel*)).  The wage paid under such an agreement "must be sufficient to satisfy minimum wage requirements and offer a premium of at least 'fifty per cent for the hours actually worked over the statutory maximum.'"  *Id.* (citation omitted).  In 1968, the Department of Labor ("DOL") promulgated an interpretive rule, 29 C.F.R. § 778.114, "to codify and clarify *Missel*."  *Id.*[5]  Under this rule, the FWW method may be used to calculate overtime for an employee who receives a fixed salary despite working hours that fluctuate from week to week.  29 C.F.R. § 778.114.  An employer may use this method if the following conditions are met:

(1)  The employee works hours that fluctuate from week to week;

(2)  The employee receives a fixed salary that does not vary with the number of hours worked in the workweek, whether few or many;

(3)  The amount of the employee's fixed salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours the employee works is greatest;

---

[5] Although the DOL revised 29 C.F.R. § 778.114 in 2011, "its text remained virtually the same as it was in 1968."  *Thomas v. Bed Bath & Beyond Inc.*, 961 F.3d 598, 605 n.3 (2d Cir. 2020).  On June 8, 2020, the DOL issued a revised version of the regulation following notice and comment, with an effective date of August 7, 2020.  *Id.* (citing 85 Fed. Reg. 34,970 (June 8, 2020)).

(4) The employee and the employer have a clear and mutual understanding that the fixed salary is compensation (apart from overtime premiums and any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind not excludable from the regular rate under [§] 7(e)(l) through (8) of the [FLSA]) for the total hours worked each workweek regardless of the number of hours, although the clear and mutual understanding does not need to extend to the specific method used to calculate overtime pay; and

(5) The employee receives overtime compensation, in addition to such fixed salary and any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind, for all overtime hours worked at a rate of not less than one-half the employee's regular rate of pay for that workweek.

*Id.* § 778.114(a)(1)–(5). Because the employee's salary is fixed, the employee's overtime rate under the FWW method "will vary from week to week." *Id.* § 778.114(a)(5). To calculate the employee's weekly overtime rate, the employer takes the employee's fixed weekly salary and any additional, non-excludable weekly pay, and then divides this figure by the number of hours worked in that workweek. *Id.* All overtime hours are then compensated at 50 percent of this hourly rate or greater. *Id.*[6] Thus, when the FWW method applies, "the minimum overtime rate required by the FLSA is only half-time (i.e., 50% of the regular rate), rather than time-and-a-half (150%)." *Stein*, 2013 WL 3809463, at *3 (citation omitted).

"The propriety of relying on [§] 778.114(a) and the FWW method in cases where the plaintiff has been miscategorized by [his] employer as exempt from the FLSA's overtime provision has divided the federal courts." *Urnikis-Negro v. Am. Family Props. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010). "Several circuit courts have applied the FWW methodology to misclassified employees seeking overtime compensation damages, while many district courts have determined that the FWW methodology should not be applied in a misclassification case."

---

[6] As the DOL rule explains, "[p]ayment for overtime hours at not less than one-half [the employee's regular rate] satisfies the overtime pay requirement because such hours have already been compensated at the straight time rate by payment of the fixed salary and non-excludable additional pay." 29 C.F.R. § 778.114(a)(5).

*O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 585 (S.D.N.Y. 2013) (citations omitted)

(gathering cases).  As the Seventh Circuit observed in *Urnikis-Negro*, § 778.114

> on its face is not a remedial measure.  It says nothing about how a court is to calculate damages where, as here, the employer has breached its obligation to pay the employee an overtime premium.  Its focus instead is on how an employer may comply with its statutory obligations in the first instance and avoid liability for breach of those obligations.

*Id.* at 678.  Indeed, two of the requirements for application of the FWW method set forth in

§ 778.114 will never be met in a misclassification case.  First, by definition, the parties in such a

case will not have had "a clear and mutual understanding that the fixed salary" constitutes

compensation "*apart from overtime premiums*."  29 C.F.R. § 778.114(a)(4) (emphasis added);

*see also Banford v. Entergy Nuclear Operations, Inc.*, No. 12-CV-131, 2014 WL 12717735, at

*3 (D. Vt. Sept. 18, 2014) ("[A]n employer that believes its employee merits no overtime

payment cannot simultaneously believe that overtime will be paid at different rates depending on

the number of hours worked per week.  Or, put another way, there cannot have been a clear

mutual understanding the employee's salary was compensation 'apart from overtime premiums'

as the rule explicitly demands." (citations omitted)); *Klein v. Torrey Point Grp., LLC*, 979 F.

Supp. 2d 417, 437 (S.D.N.Y. 2013) (observing that "for an employee misclassified as exempt

from overtime requirements, there cannot have been a clear mutual understanding that his salary

was compensation 'apart from overtime premiums,' as the regulation demands: on the contrary,

the understanding between the parties was based on the erroneous premise that the employee was

not eligible for overtime premiums at all"); *O'Neill*, 968 F. Supp. 2d at 586 (observing that the

"clear mutual understanding" requirement cannot be satisfied in a misclassification case because,

in every such case, "there was an understanding—at least on the part of the employer—that the

employee was not entitled to overtime compensation"); *Costello v. Home Depot USA, Inc.*, 944

F. Supp. 2d 199, 206 (D. Conn. 2013) ("[I]n a misclassification case in which the employer believes that no overtime payments are ever due to the employee, it is simply logically impossible to have the kind of 'clear, mutual understanding' involving the weekly wage rate and contemporaneous overtime premiums contemplated by [§] 778.114."). Second, an allegedly misclassified employee will not have received contemporaneous overtime pay as required by § 778.114. *See Banford*, 2014 WL 12717735, at *3; *see also Klein*, 979 F. Supp. 2d at 437 ("[A] misclassified employee did not, by definition, receive any overtime premiums during his employment."); *O'Neill*, 968 F. Supp. 2d at 586 ("Here, as presumably in all misclassification cases, there was no contemporaneous payment of overtime compensation . . . ."); *Costello*, 944 F. Supp. 2d at 205 ("[B]y its very nature, a case involving a misclassification does not contemplate the contemporaneous payment of overtime.").

For these reasons, courts in this Circuit have concluded that § 778.114 does not provide a basis to apply the FWW method retroactively when calculating damages in a misclassification case. *See, e.g.*, *Banford*, 2014 WL 12717735, at *3 ("Although [§ 778.114] may be useful when evaluating the legality of an employment contract that involves fluctuating hours, it has far less value when considering how to craft a remedy when an employee has been mischaracterized as a result of a violation of the [FLSA]. It does not make sense to apply this rule retrospectively in a mischaracterization case."); *Klein*, 979 F. Supp. 2d at 436 ("The [c]ourt concludes that [§ 778.114], on its own terms, may not be used to calculate overtime payments in the context of a misclassified employee."); *O'Neill*, 968 F. Supp. 2d at 586 (agreeing "with those circuit and district court decisions finding that [§ 778.114] is not applicable to calculation of overtime damages where an employee has been misclassified" because "the FWW methodology set forth in the DOL bulletin was never intended to be applied retroactively in a case where an employee

has been misclassified as exempt"); *Costello*, 944 F. Supp. 2d at 205 (concluding that

"[§] 778.114 is not intended as a means of calculating damages"); *Hasan v. GPM Invs., LLC*,

896 F. Supp. 2d 145, 149 (D. Conn. 2012) ("When an employer misclassifies an employee, the

resultant employment contract will never fulfill any of the requirements of [§] 778.114."). Thus,

the Parties' reliance on § 778.114, (*see* Feb. 12 Sabharwal Letter 3), is misplaced in this case.

"[T]here was no contemporaneous payment of overtime compensation, nor was there a 'clear

mutual understanding [between] the [P]arties that [Plaintiff's] fixed salary [was] compensation

(*apart from overtime premiums*) for the hours worked each workweek.'" *O'Neill*, 968 F. Supp.

2d at 586 (second alteration in original) (emphasis added).[7]   Accordingly, this provision does not

authorize application of the FWW method when determining Plaintiff's potential recovery.

Although § 778.114 does not provide a basis for applying the FWW method in this case,

several courts have concluded that the Supreme Court's decision in *Missel* provides an

alternative basis for using this methodology. *See id.* at 587 ("Several courts have . . . applied the

FWW methodology—not as a result of [§ 778.114]—but instead as a natural outgrowth of the

Supreme Court's decision in *Missel*."). In *Urnikis-Negro*, for example, the Seventh Circuit

---

[7] The Parties have represented that they "are in agreement that there was an understanding that Plaintiff would be paid a fixed salary for all hours worked in each workweek and that the fixed salary was compensation *separate from overtime*." (Feb. 12 Sabharwal Letter 3 (emphasis added).) The last part of this statement, which suggests a mutual understanding that Plaintiff's compensation was "separate from overtime," is inconsistent both with the basic premise of this litigation and with other representations in the Parties' joint submission. Here, the Parties dispute whether Plaintiff was an exempt employee. (*See id.* at 7.) That is, Defendants dispute whether Plaintiff was ever entitled to *any* overtime payments. (*See id.*) It makes no sense, therefore, to suggest that the Parties had a mutual understanding that Plaintiff's fixed pay was compensation "separate from overtime." (*Id.* at 3.) Although there may well have been a mutual understanding that Plaintiff "would be paid a fixed salary for all hours worked in each workweek," regardless of how many hours he ultimately worked, (*see id.*), it is not credible to suggest that this mutual understanding encompassed an agreement with respect to Plaintiff's entitlement to overtime that would satisfy the requirement in § 778.114.

concluded that where an employee "routinely work[s] substantial amounts of overtime," "never receive[s] any premium for [his] overtime hours," and is "paid a fixed weekly sum for any and all hours that [he] work[s]," *Misell* provides that "the employee's regular rate of pay for a given week is calculated by dividing the fixed weekly wage by the total number of hours worked in that week."  616 F.3d at 681.  "The employee is then entitled to an overtime premium of one-half of that rate."  *Id.*  Thus, although § 778.114 provides a "dubious source of authority for calculating a misclassified employee's damages," the methodology itself, derived from *Missel*, may still be appropriate in a misclassification case.  *Id.* at 679; *see also id.* at 681 (observing that where the conditions above are met, the "method of calculating an employee's regular rate of pay and the overtime premium . . . incorporated into [§] 778.114 . . . is correct even if, analytically, the rule itself is inapt").  Relying in part on *Urnikis-Negro*, another court in this District concluded that although § 778.114 "cannot apply to misclassified employees" because "neither of the two conclusive conditions of the regulation can be met," the FWW method may nevertheless be used to calculate damages in misclassification cases where certain conditions are satisfied.  *Klein*, 979 F. Supp. 2d at 437, 438.  As the court explained:

> when an employee has been misclassified as exempt from overtime protections *and* the parties have mutually agreed that a flat weekly wage would compensate the employee for all his hours, no matter their number, *Missel* provides the correct method to calculate overtime damages: the effective wage should be calculated by dividing the flat wage by the total hours worked.

*Id.* at 438.  At least three other courts in this Circuit—including two in this District—have likewise recognized that *Missel*, either alone or in tandem with its companion case, provides an alternative basis for applying the FWW method.  *See Siegel v. Bloomberg L.P.*, No. 13-CV-1351, 2015 WL 223781, at *6 (S.D.N.Y. Jan. 16, 2015) (relying on *Klein* and concluding that although "the FWW method as spelled out in the DOL regulations cannot apply . . . where an employee

was misclassified by his employer as exempt from the FLSA's overtime requirements and never received overtime payments[,] . . . the FWW method as originally spelled out in *Missel* may still apply in this context" (citation omitted)); *Banford*, 2014 WL 12717735, at *4–5 (concluding that although § 778.114 may not be applied retroactively, "*Missel* recognizes that employees and employers are free to agree that a fixed weekly salary will constitute payment at the regular rate for any and all hours worked," and, "if the jury finds that the parties agreed that the hours would fluctuate and straight-time pay would compensate all hours, then only a one-half premium is owed"); *O'Neill*, 968 F. Supp. 2d at 587 ("While *Missel* itself does not reflect—in this [c]ourt's view—clear approval of the half-pay premium, the companion case to *Missel*—*Walling v. A.H. Belo Corp.*, 316 U.S. 624 (1942)—provides figures that permit the reader to confirm that the *Missel* Court intended to approve a half-pay multiplier." (final italics added) (citations omitted)).

It is true that some courts in this Circuit have declined to rely on *Missel* as an independent basis for applying the FWW method.  In *Costello*, the District Court of Connecticut acknowledged that "[t]his more permissive reading of *Missel* does have support," but nevertheless declined to follow this approach.  944 F. Supp. 2d at 206–08.  As that court observed, this approach "mean[s] that [some] requirements necessary to establish a typical FWW agreement—such as the contemporaneous payment of overtime premiums mandated by [§] 778.114—do not apply to overtime calculations in a misclassification case because *Missel* itself does not make those requirements explicit."  *Id.* at 207.  Likewise, the *Costello* court interpreted *Missel* as requiring employment contracts "to include a provision regarding contemplation of payment of overtime," whereas *Klein* and similar cases have not.  *See id.* ("In other words, this court concludes that an employee cannot achieve a clear, mutual understanding as to whether a fixed salary is intended to cover all hours worked unless that understanding

13

includes some provision for the payment of overtime; without it, there is no understanding as to an 'agreed wage' under *Missel*." (citation omitted)).  *Costello* therefore advances the view that "[§] 778.114 accurately reflects the holding of *Missel*," and, thus, courts should not interpret *Missel* as providing a more permissive standard for applying the FWW method when the requirements of § 778.114 have not been met.  *See id.*  More recently, another decision in the District Court of Connecticut adopted the approach advocated in *Costello*.  *See Strauch v. Comput. Scis. Corp.*, No. 14-CV-956, 2018 WL 5870337, at *4 (D. Conn. Nov. 9, 2018).

The Second Circuit acknowledged this intra-Circuit split in a 2016 summary order.  *See Banford v. Entergy Nuclear Operations, Inc.*, 649 F. App'x 89, 91 (2d Cir. 2016) (summary order).  The court noted at the outset that "[e]very one of [its] sister circuits to consider the question has found that FWW may be used to calculate damages where, as here, employees were misclassified as exempt from the FLSA, with some locating authority in 29 C.F.R. § 778.114 and others relying on *Missel*."  *Id.* (footnote omitted) (gathering authorities).  It then acknowledged, however, that "district courts within this [C]ircuit have split on whether FWW may be applied retroactively at all."  *Id.* (comparing *Klein* and *Costello*).  Ultimately, though, because the court found "it unnecessary to apply the FWW method" based on the record evidence presented at the underlying trial, the court declined to "conclusively resolve these FWW issues" on appeal.  *Id.* Although the Second Circuit revisited the FWW method last year, issuing its first published opinion on the topic, that case did not address the relevant issue here.  *See Thomas*, 961 F.3d at 606.

Consistent with the authority from this District, most notably *Klein* and *O'Neill*, as well as the Seventh Circuit's opinion in *Urnikis-Negro*, this Court finds that *Missel* provides an independent basis to apply the FWW method in this case.  It is true that this approach creates a

14

disparity between the requirements for applying the FWW method pursuant to *Missel* and pursuant to § 778.114—a criticism raised in *Costello*.  *See* 944 F. Supp. 2d at 207.  But such disparity simply reflects courts' view that § 778.114 incorporates requirements that were never set forth in *Missel*.  *Costello*'s critique in this regard is not entirely persuasive.  For example, although *Costello* suggested that *Missel* requires the parties' employment agreement "to include a provision regarding [overtime payment]" in order to warrant application of the FWW method, *Costello* also concedes that "the text of *Missel* is not entirely clear on this point."  *Id.*  In any event, *Costello*'s conclusion does not follow from its premise.  Although "*Missel* does mention failure to include a provision regarding contemplation of payment of overtime as a reason for rejecting the contract at issue in that case," *id.*, the Supreme Court nevertheless authorized use of the FWW method in *Missel*, *see Urnikis-Negro*, 616 F.3d at 681 (citing *Missel*, 316 U.S. at 580 & n.16; *Walling*, 316 U.S. at 634 (discussing regular and overtime rates of pay under *Missel*)); *O'Neill*, 968 F. Supp. 2d at 587 (finding that the *Missel* Court "intended to approve a half-pay multiplier"); *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 255 (S.D.N.Y. 2013) (stating that "the lasting significance of [*Missel*] is its approval under the FLSA of paying an employee a flat weekly salary for fluctuating hours so long as a premium is also paid of at least 'fifty per cent additional for the hours actually worked over the statutory maximum'" (citation omitted)).  This fact seemingly undermines *Costello*'s contention that *Missel* requires an agreement regarding overtime in order for the FWW method to be applied.  *Costello*'s position that "[§] 778.114 accurately reflects the holding of *Missel*," 944 F. Supp. 2d at 207, is further undermined by the fact that there clearly was no contemporaneous payment of overtime in *Missel*, *see* 316 U.S. at 574, as is required under § 778.114.  To the extent § 778.114 imposes additional requirements that were not clearly articulated in *Missel*, the Court has found little support for reading those

requirements back into *Missel*.  As the court noted in *Urnikis-Negro*, § 778.114 is a "forward looking" rule that "describes a manner in which an employer may compensate a nonexempt employee by means of a fixed wage for variable hours," but it "says nothing about how a court is to calculate damages where, as here, the employer has [allegedly] breached its obligation to pay the employee an overtime premium."  616 F.3d at 677–78.  *Missel* provides guidance on that issue, and, in the Court's view, cases such as *Urnikis-Negro* and *Klein* provide a more faithful interpretation of its holding than *Costello* and similar cases.

Here, the Parties have stipulated that there was a mutual agreement Plaintiff would be paid a fixed salary for all hours worked in a given workweek.  (Feb. 12 Sabharwal Letter 3.)  It is further stipulated that "Plaintiff worked hours that fluctuated from week to week," and that he did in fact "receive[] a fixed salary that did not vary with the number of hours worked in each workweek."  (*Id.*)  Finally, "[t]he amount of [Plaintiff's] fixed salary[,] when divided by the number of hours worked per week[,] exceeds the applicable minimum wage."  (*Id.*)  Under *Missel*, the FWW method is the appropriate mechanism for calculating damages in this case.  *See Klein*, 979 F. Supp. 2d at 439 ("[I]f an employee reached a clear understanding that his compensation was payment for all hours worked per week, no matter their number, then the method prescribed in *Missel* would govern.").

### b.  Fairness of Settlement Amount

According to their joint letter, the Parties estimate that Plaintiff's maximum possible recovery at trial would be $155,306.  (Feb. 12 Sabharwal Letter 7.)  This figure is made up of (i) FLSA damages for the period from September 1, 2017 to January 24, 2020, calculated using the FWW method, as well as liquidated damages in an equal amount ($73,080), (*see id.* at 3–5); (ii) NYLL damages for the period from September 1, 2014 to August 31, 2017, also calculated

using the FWW method, as well as liquidated damages in an equal amount ($77,226), (*see id.* at

5–7); and (iii) statutory damages of $5,000, (*see id.* at 7).[8, 9]  The Court has reviewed the Parties'

calculations and found them to be accurate.  The proposed settlement amount—$20,000—

represents just under 13% of Plaintiff's potential recovery at trial.  Although this amount is

lower, as a percentage of the total potential recovery, than settlement amounts typically approved

by courts in the Second Circuit, it "is not dramatically lower than similar settlements approved

by courts in this [D]istrict," *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020

WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (allowing a subset of plaintiffs to recover a

---

[8] Although the statute of limitations under the FLSA is two years, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  Here, Plaintiff alleges that Defendants' violation was willful. (Compl. ¶ 39.)

[9] To calculate Plaintiff's damages, the Parties took Plaintiff's annual compensation (which included an annual salary and fixed monthly payments), and then used this figure to derive Plaintiff's regular hourly rate based on an average workweek of 55 hours.  (*See* Feb. 12 Sabharwal Letter 4–7.)  The Parties calculated a 50 percent premium using Plaintiff's regular hourly rate, and then multiplied this rate by the average 15 hours of overtime Plaintiff worked each week.  (*See id.*)

Although relying on a consistent weekly average is somewhat counterintuitive given the underlying premise of the FWW method, courts have found this to be a permissible technique when calculating damages under this methodology, particularly where the defendant has not kept contemporaneous time records.  *See Urnikis-Negro*, 616 F.3d at 671 (explaining that "because there were no contemporaneous records of the hours that [the plaintiff] had worked, . . . the court calculated a regular hourly rate . . . by dividing her weekly salary of $1,000 by the *average number of hours per week she worked in those periods*," and "then calculated the overtime pay due for each of these periods by halving the regular hourly rate and multiplying it by the number of overtime hours worked during that period" (emphasis added)); *Hui Luo v. L&S Acupuncture, P.C.*, No. 14-CV-1003, 2015 WL 1055084, at *8 (E.D.N.Y. Jan. 23, 2015) (using the FWW method and noting that "because no weekly pay amounts were put before [the court], the damages calculations . . . [were] derived not from weekly pay figures, but from an average of plaintiff's hours and compensation during the three distinct periods throughout which her monthly rate was generally steady").

Finally, the Court notes that the FWW method may be applied when calculating overtime damages under the NYLL, as the Parties have done here.  *See RadioShack*, 981 F. Supp. 2d at 252–53.

settlement amount that was 12.5% of their best-case scenario recovery); *see also Gervacio v. ARJ Laundry Servs. Inc.*, No. 17-CV-9632, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (approving settlement amount equal to roughly 20% of total possible recovery).  This amount is also appropriate in light of the factual and legal litigation risks Plaintiff faces, two of which are particularly significant.  First, Plaintiff could be found to be an exempt employee, "which would eliminate all liability if Defendants were to prevail [on this issue]."  (Feb. 12 Sabharwal Letter 7.)  Second, even if Plaintiff were found to be a non-exempt employee, there is a litigation risk insofar as a jury might find that Plaintiff "generally worked less than 40 hours per week," and that, to the extent he worked more than this, "it was because he was working on the tankers at Palisades and . . . was compensated for that additional work at an amount of $2,500 per month." (*Id.*)  The Court considers the settlement amount in light of "the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement."  *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016).  As noted in the Court's previous Order, one court in this Circuit has approved a settlement of only 7% of the plaintiff's best-case scenario, based on a similar combination of factual and legal risk.  (Jan. 2021 Order 7–8 (citing *Aguilar v. N & A Prods. Inc.*, No. 19-CV-1703, 2019 WL 5449061, at *1–2 (S.D.N.Y. Oct. 24, 2019) (approving settlement of $40,000 where the plaintiffs' estimated potential recovery was $570,000, based on, inter alia, a dispute about the plaintiff's exempt status and number of hours worked)).)  In light of the factual and legal risks here, the Court finds that the settlement amount in the RSA is fair and reasonable.

### 2.  Good Faith

The Court has no reason to revisit its previous conclusion that the Parties' settlement "was negotiated competently, in good faith, [and] at arm's length," nor is there any reason to

believe there was any fraud or collusion.  (*See* Jan. 2021 Order 9.)  The Court remains satisfied, based on the Parties' representations, that the settlement will allow the Parties to avoid the anticipated burdens and risks of litigation.  (*Id.*)

### 3.  Similarly Situated Plaintiffs

As was true when it issued its previous Order, the Court is not aware of other employees who are similarly situated to Plaintiff, and Plaintiff will still be the only employee affected by the settlement and dismissal of the lawsuit.  (*See id.*)  These facts support approval of the RSA.  *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement); *Penafiel*, 2015 WL 7736551, at *2 (noting that the fact that "no other employee ha[d] come forward" supported settlement approval); *see also Santos v. Yellowstone Props., Inc.*, No. 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same).

### 4.  Release Provision

The release provision in the RSA is identical to that in the PSA.  (*Compare* RSA ¶ 3, *with* PSA ¶ 3.)  Thus, consistent with its previous Order, (*see* Jan. 2021 Order 9–12), the Court finds that the proposed release provision is appropriately narrow.  The RSA provides that "Plaintiff knowingly and voluntarily releases and forever discharges [Defendants] of and from all claims asserted in this [A]ction, consistent with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as of the date of execution of this Agreement."  (RSA ¶ 3.)  This release provision is appropriate under applicable law.  In general, "any release provision must be limited to the claims at issue in this action."  *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259,

2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015); *see also Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) ("[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." (citation and quotation marks omitted)).  Thus, courts have held that in an FLSA settlement, the release must generally be limited only to wage and hour claims.  *See Cheeks*, 796 F.3d at 206 (explaining that courts will not approve settlement agreements that waive "claims that have no relationship whatsoever to wage-and-hour issues"); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving release that, "while broad, . . . relates specifically to wage and hour issues without encompassing, for example, prospective discrimination claims").  Accordingly, because the RSA specifies that the release applies only to "all claims asserted in this [A]ction," (RSA ¶ 3), which claims pertain exclusively to wage-and-hour issues, the release provision is appropriately narrow.

As noted, the Parties have also entered into a separate, confidential agreement to resolve Plaintiff's alleged discrimination claims.  (*See* Oct. 23 Sabharwal Letter 2.)  Precedent confirms that such an approach is permissible.  *See Ortiz v. Breadroll, LLC*, No. 16-CV-7998, 2017 WL 2079787, at *2 (S.D.N.Y. May 15, 2017) (observing "authority for a bifurcated settlement agreement," in which the parties submit an FLSA agreement for court review and approval, "but enter into a separate . . . settlement agreement with respect to the counterclaims" (collecting cases)); *Yunda v. SAFI-G*, No. 15-CV-8861, 2017 WL 1608898, at *1–2 (S.D.N.Y. Apr. 28, 2017) (approving the submission of two settlement agreements, one resolving the plaintiff's FLSA claims that required approval under *Cheeks*, and the other resolving the plaintiff's NYLL claims that did not require approval under *Cheeks* and that contained a confidentiality clause);

*Abrar v. 7-Eleven, Inc.*, No. 14-CV-6315, 2016 WL 1465360, at *1 (E.D.N.Y. Apr. 14, 2016) (noting that the court approved of a bifurcated settlement structure whereby the parties publicly filed their FLSA settlement agreement and executed a separate, confidential settlement agreement for non-FLSA claims under the NYLL).

### 5.  Attorneys' Fees

Because Plaintiff's counsel has waived his right to attorneys' fees with respect to the FLSA claim, (Feb. 12 Sabharwal Letter 7), the Court need not consider this final factor.  *See Davitashvili v. Beacon Van Line & Storage, Inc.*, No. 15-CV-5575, 2016 WL 5390336, at *1 (E.D.N.Y. Sept. 26, 2016) (adopting report and recommendation approving an FLSA settlement agreement in which the plaintiff's counsel "waive[d] any rights to fees").

### III.  Conclusion

For the foregoing reasons, the Parties' request for approval of the RSA is granted.  The Clerk of Court is respectfully directed to close this case.

 SO ORDERED.

Dated:  May 11, 2021
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE